*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CADLEROCK JOINT VENTURE, LP,

Plaintiff-Appellant,

v

ATINA M. BUTERAKOUS, also known as ATINA M. BEUGRAND,

Defendant-Appellee.

UNPUBLISHED
October 12, 2023

No. 363078
Wayne Circuit Court
LC No. 21-002537-CK

Before: O'BRIEN, P.J., and SWARTZLE and GARRETT, JJ.

PER CURIAM.

Plaintiff, Cadlerock Joint Venture, LP, appeals as of right the trial court's opinion and order denying plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition in favor of defendant, Atina M. Buterakous, under MCR 2.116(I)(2). We reverse and remand for further proceedings.

## I. BACKGROUND

In April 2003, defendant and her then-husband signed a note (the Note) securing a $46,000 loan with an interest rate of 8.99% from Horizon National Bank (Horizon). The loan was secured by a mortgage on the couple's marital home. Under the terms of the Note, defendant and her then-husband were required to make monthly payments beginning in May 2003. The Note also states that "[i]f, on April 28, 2018, [the borrower] still owe[s] amounts under this note, [the borrower] will pay all those amounts, in full, on that date."

According to defendant, she divorced her then-husband in 2004, no payment was made on the Note after 2006, the home securing the Note was sold at a sheriff's sale in 2007, and she was unaware that there was any liability still owing on the Note following the sheriff's sale until she was served with this lawsuit in 2021.

-1-

According to plaintiff, at some point after 2003, Horizon assigned the Note to "Homecomings Financial, LLC" (Homecomings),[1] who in turn sold its interest in the Note to plaintiff. However, Homecomings apparently did not have the original note, so it executed a "Lost Note Affidavit" and "Assignment of Lost Note" to effectuate the sale. In the "Lost Note Affidavit," the affiant averred that the Note was sold to plaintiff in 2008 and that, while he was unable to locate the original note, Homecomings had no record of any interest in the Note being otherwise sold or assigned, and the "affidavit [was] made and [was] given for the purpose of inducing the purchase of the above described note without requiring the delivery, surrender and endorsement of the original of same." The "Assignment of Lost Note" states that Homecomings transferred the Note to plaintiff for "good and valuable consideration."

Plaintiff filed the complaint giving rise to this action on February 24, 2021. In its complaint, plaintiff claimed that it was the rightful owner and holder of the Note (despite being unable to locate the original note), and alleged that defendant had defaulted on the Note and therefore owed plaintiff over $80,000[2] based on the remaining principal plus interest.

On May 10, 2021, defendant filed an answer in which she admitted entering into the Note, admitted that the principal outstanding on the Note "at the time of default was $39,175," and admitted "failing to make all payments" on the Note, but denied that plaintiff was entitled to judgment. On the same day, defendant filed a list of affirmative defenses, including that plaintiff's claim was barred by the statute of limitations, laches, discharge, satisfaction, and release.

On October 27, 2021, plaintiff moved for summary disposition in relevant part under MCR 2.116(C)(10). Plaintiff argued that it was entitled to summary disposition under MCR 2.116(C)(10) because it was uncontested that defendant entered into the Note, that she defaulted on the Note by failing to make the required payments, and that she was therefore liable for the outstanding balance of the Note plus interest.

In response, defendant first argued that, under the statute of limitations applicable to its claim, plaintiff had six years from when defendant defaulted on the Note to bring its action. According to defendant, she defaulted on the Note in 2006, so plaintiff's claim brought in 2021 was untimely. Defendant alternatively argued that plaintiff was not entitled to the relief it sought because plaintiff failed in its duty to mitigate damages. Defendant contended that, if plaintiff acquired the Note in 2008 as it claimed, then it inexplicably allowed interest to accumulate on the Note for 13 years before bringing this action. Defendant also contended that it was unclear whether plaintiff's predecessor received any proceeds from the 2007 sheriff's sale of defendant's home securing the mortgage. According to defendant, these outstanding factual issues precluded summary disposition. Defendant relatedly argued that plaintiff's claim was barred by laches because it was unjust for plaintiff to wait nearly 15 years before attempting to collect on the Note.

---

[1] While plaintiff never explicitly states that the note was assigned to Homecomings, in the relevant documents, Homecomings is always referred to as "HOMECOMINGS FINANCIAL, LLC ASSIGNEE OF HORIZON NATIONAL BANK, A NATIONALLY CHARTERED BANK."

[2] In plaintiff's complaint, it asserted that the total amount defendant owed was $87,904.63, but in its motion for summary disposition, it claimed that defendant owed $82,835.69 and $92,835.69.

Defendant concluded by asserting that, for all the same reasons argued in its brief, it was entitled to summary disposition under MCR 2.116(I)(2).

In response, plaintiff contended that its suit was timely because the Note was payable at a definite time—April 28, 2018—and plaintiff commenced its suit within six years of that time. Plaintiff acknowledged that it could have made a demand when defendant was originally in default but argued that it was not required to do so under the terms of the Note. In response to defendant's argument that plaintiff failed to mitigate its damages, plaintiff argued that it could have waited even longer to file suit, but chose to do so earlier, demonstrating that plaintiff mitigated damages. Finally, in response to defendant's laches argument, plaintiff argued that it timely brought its suit, so equity should not bar its enforcement just because it would require defendant to pay the obligation she agreed to assume.

At the hearing on the parties' motions, defendant stressed that summary disposition was improper because the Note was lost so it was unknown whether the Note had been satisfied after the sheriff's sale of the home securing the Note. The parties otherwise repeated the arguments they made in their briefs, and the trial court took the matter under advisement.

The trial court eventually issued a written opinion on September 8, 2022. The trial court held that plaintiff's claim was barred by the statute of limitations, explaining in relevant part:

> In Michigan, the general statute of limitations on an obligation to pay a loan on a note is 6 years after the due dates pursuant to MCL 440.3118(1 ). If the lender accelerates the loan, it is 6 years after the accelerated due date. Plaintiff has no proof that it accelerated the loan or even made a demand for payment. In addition, under MCL 440.3318(2), "[i]f no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years." Plaintiff has provided no evidence that it made a demand for payment. It provides only its bare assertion that it attempted to communicate with Defendant regarding payment. Defendant's last payment was in 2006. Fifteen years elapsed since Defendant's last payment. Thus, under MCL 440.3318(2), Plaintiffs action is barred. Although Plaintiff claims that the claim accrued when the Note matured in 2018 and its claim is timely, it provides no authority for such an assertion. It also claims there is no acceleration clause in the Note. However, section (C) of the Note provides that the lender "may" accelerate the loan.

The trial court declined to address defendant's alternative arguments. In its conclusion, the trial court sua sponte entered "an award of sanctions and attorney fees" to defendant. The trial court entered an order granting summary disposition to defendant under MCR 2.116(I)(2) the same day. This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). Plaintiff moved for summary disposition under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is proper when "there is no

genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013). In response to plaintiff's motion for summary disposition, defendant asked for—and the trial court granted—summary disposition in favor of defendant under MCR 2.116(I)(2). That rule provides, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2). To the extent that the issues raised on appeal concern matters of statutory interpretation, they are reviewed de novo. *Putkamer v Transamerica Ins Corp of Am*, 454 Mich 626, 631; 563 NW2d 683 (1997).

## III. ANALYSIS

Plaintiff argues that the trial court erred when it concluded that plaintiff's claim was barred by the statute of limitations. We agree.[3]

The trial court granted summary disposition to defendant because it concluded that plaintiff's claim was barred by the statute of limitations in MCL 440.3118. That statute provides in relevant part:

> (1) Except as provided in subsection (5), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.

> (2) Except as provided in subsection (4) or (5), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within 6 years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred

---

[3] While not raised by the parties, it is unclear whether plaintiff is able to enforce the Note in this case. On the copy of the original note, Horizon is designated as the holder of the Note. Yet in the assignment that plaintiff provided to establish its interest in the Note, *Homecomings* assigned its (supposed) interest in the Note to plaintiff. While Homecomings identifies itself as Horizon's assignee, nothing in the record actually establishes that Horizon assigned its interest in the Note to Homecomings. It is therefore not evident from the record that Homecomings had any interest in the Note to assign plaintiff. And if plaintiff lacks interest in the Note, then it "lack[s] standing because it [is] not the proper party to assert the breach-of-contract claim[]" against defendant. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 623-624; 873 NW2d 783 (2015). Because the issue is not raised by the parties, however, we decline to address it at this time, though the parties remain free to address the issue on remand.

if neither principal nor interest on the note has been paid for a continuous period of 10 years.

Based on the plain language of the statute, the first subsection applies to "a note payable at a definite time," while the second subsection applies to "a note payable on demand."[4] The terms "payable on demand" and "payable at a definite" time are defined in MCL 440.3108, which provides in relevant part:

(1) A promise or order is "payable on demand" if it:

(a) States that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder.

(b) Does not state any time of payment.

(2) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of:

(a) Prepayment.

(b) Acceleration.

(c) Extension at the option of the holder.

(d) Extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

Based on these definitions, the Note at issue in this case was "payable at a definite time," not "payable on demand." The Note does not say anywhere that it is "payable on demand or at sight," nor does it otherwise indicate that "it is payable at the will of the holder." MCL 440.3108(1). Rather, the Note states that it was to be paid in monthly installments, and "[i]f, on April 28, 2018, [the borrower] still owe[s] amounts under this Note, [the borrower] will pay all those amounts, in full, on that date." This makes clear that the Note is payable "at a fixed date . . . readily ascertainable at the time the" note was issued. MCL 440.3108(2). Accord *Joseph & Anita Russell Tr. by White v Russell*, 338 Mich App 170, 185; 979 NW2d 672 (2021) ("We conclude that the promissory note at issue is payable at a definite time. In light of the language in the note requiring monthly payments of at least $500 commencing 30 days from the date of execution of the note, with 3% interest per annum, the promissory note is payable at a time that is readily ascertainable, MCL 440.3108(2)."). While the Note has an acceleration clause, MCL 440.3108(2)(b) specifically acknowledges that a note "payable at a definite time" may be subject

---

[4] While the second sentence in MCL 440.3118(2) does not state that it only applies to a note payable on demand, this is the only logical interpretation of the subsection in context.

to the right of acceleration. In other words, the fact that the Note has an acceleration clause does not change the fact that the note is payable at a definite time.

Because the Note is payable at a definite time under MCL 440.3108(2), the statute of limitations applicable to this action to collect on the Note is MCL 440.3118(1), and the trial court erred by concluding that MCL 440.3118(2) applied. Again, MCL 440.3118(1) states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date." MCL 440.3118(1). It is undisputed that the due date for the Note in this case was never accelerated, so plaintiff had six years from the Note's due date—April 28, 2018—to commence this action. Plaintiff's action filed on February 24, 2021, was within this six-year timeframe and was therefore timely. Accordingly, the trial court erred by holding that plaintiff's claim was barred by the statute of limitations in MCL 440.3118, and correspondingly erred by sanctioning plaintiff.

In arguing against this result, defendant first contends that plaintiff's claim accrued when defendant breached the terms of the Note. In reliance on this argument, defendant cites *Jacobs v Detroit Auto Inter-Ins Exch*, 107 Mich App 424; 309 NW2d 627 (1981), and *In re Estate of Easterbrook*, 114 Mich App 739; 319 NW2d 655 (1982). Both cases are irrelevant to the instant case, however. The instant case concerns a negotiable instrument, and the statute of limitations applicable to claims concerning negotiable instruments is found in MCL 440.3118. That statute was not added until 1993 with the passage of 1993 PA 130. See *Rahaim v Rahaim*, unpublished per curiam opinion of the Court of Appeals, issued November 27, 2001 (Docket No. 216664), pp 4-7 (discussing the addition of 1993 PA 130 and its effects). Both *Jacobs* and *In re Estate of Easterbrook* predate the passage of 1993 PA 130, and thus dealt with the general statute of limitations applicable to breach-of-contract actions, which is found in MCL 600.5807. See, e.g., *Diversified Fin Sys, Inc v Schanhals*, 203 Mich App 589, 591-592; 513 NW2d 210 (1994) (applying MCL 600.5807 to negotiable instruments before the passage of 1993 PA 130). Based on MCL 440.3118(1), it is clear that the accrual date for plaintiff's cause of action in this case was the Note's due date—April 28, 2018—because plaintiff never accelerated the Note.

Defendant also directs this Court's attention to *Smith v Dept of Treasury*, 163 Mich App 179, 185; 414 NW2d 374 (1987), where this Court stated, "The accrual, for purposes of the statute of limitation, commences to run when the payee, by his own act, and in spite of the debtor, can make the demand payable." Defendant seemingly cites this case for the proposition that plaintiff's claim accrued when it could first demand payment from defendant when she defaulted in 2006. This portion of *Smith* is inapplicable to this case, however. *Smith* was discussing a negotiable instrument that did not specify when payment was to be made, explaining, "When no time for payment is specified, the law will presume a reasonable time." *Id*. at 184. *Smith* elaborated, however, that "a payee may not postpone enforcement of his claim indefinitely when the language of a note contemplates that a demand be made." *Id*. at 185. It was in this context that the quote from *Smith* was made, explaining how to determine when the statute of limitations begins to run

when a negotiable instrument does not specify when it is due but is payable on demand. Clearly, the situation here is not analogous.[5]

Plaintiff summarily asserts on appeal that, if this Court disagrees with the trial court's conclusion, then summary disposition in plaintiff's favor is warranted. This is simply untrue. Defendant raised a variety of other defenses in the trial court that the trial court declined to address. Accordingly, remand is necessary to, at the very least, permit the trial court to address the remainder of the parties' arguments.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett

---

[5] We acknowledge that that the trial court also reasoned, "In addition, under *In re $55,33617 Surplus Funds*, [319 Mich App 501; 902 NW2d 422 (2017)], Plaintiff's rights were completely extinguished because it never attempted to redeem the property during the redemption period." It therefore appears that the trial court concluded that plaintiff no longer had any interest in the Note because it failed to exercise its redemption rights in 2007 when defendant's house was sold at a sheriff's sale. It is true that "in Michigan, the foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee does not exercise its right to redeem." *Id.* at 509. Plaintiff, however, is not attempting to collect from proceeds from the sheriff's sale, nor is plaintiff otherwise claiming any interest in or lien on the foreclosed-upon property. Rather, plaintiff is attempting to collect from defendant individually, which plaintiff is permitted to do under the terms of the Note.